# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAMES SWALWELL,

     *Plaintiff,*

*v.*                   CASE NO. 14-13577

CAROLYN W. COLVIN        DISTRICT JUDGE GEORGE CARAM STEEH
Commissioner of Social Security,    MAGISTRATE JUDGE PATRICIA T. MORRIS

     *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Motion for Summary Judgment be **GRANTED**.

## II.   REPORT

### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Title II of the Social Security Act 42 U.S.C. § 401-34. The matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 15, 16.)

Plaintiff James Swalwell applied for DIB on November 10, 2011. (Tr. at 145-46.) This claim was denied on April 9, 2012. (Tr. at 87-98.) Plaintiff alleged that he became disabled at age forty-four on February 14, 2009. (Tr. at 145.) At the initial administrative stage, the Commissioner considered disorders of back, discogenic and degenerative, and unspecified arthropathies, denying Plaintiff's claims. (Tr. at 97-98.)

Administrative Law Judge ("ALJ") David A. Mason, Jr. convened a hearing on April 25, 2013. (Tr. at 36-86.) The ALJ issued a written decision on June 10, 2013 denying Plaintiff's claims, which became the Commissioner's final decision, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 24, 2014, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On September 16, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

**B.      Standard of Review**

The Social Security system has a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the factual determinations to ensure they are supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The administrative process provides multiple opportunities for reviewing the state agency's initial determination. The Plaintiff can first appeal the decision to the Social Security Agency, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). Once this administrative process is complete, an unsuccessful claimant may file an action in federal district court. *Sullivan v. Zebley*, 493 U.S. 521, 524-28 (1990), *superseded by statute on other*

*grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final administrative decision. The statute limits the scope of judicial review, requiring the Court to "'affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court's review of the decision for substantial evidence does not permit it to "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making

3

a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely on an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The court can only review the record before the ALJ. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*, 336 F.3d at 475. "[T]he . . . standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Longworth*, 402 F.3d at 595 (quoting *Warner*, 375 F.3d at 390). "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

A court's review of the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether

it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))).

### C.      Governing Law

"'The burden lies with the claimant to prove that she is disabled.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 353). *Accord Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401-34, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381-85. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474. *See also Cruse*, 502 F.3d at 540. The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

###### D.    ALJ Findings

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 14, 2009, the alleged onset date. (Tr. at 24.) The ALJ also found that he met the insured status through December 31, 2015. (*Id.*) At step two, the ALJ concluded that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine status post lumbar microdiskectomy and right shoulder impingement."(Tr. at 25.) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. at 25-26.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work. (Tr. at 26-29.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 29.) The ALJ also found that on the alleged disability onset date, Plaintiff was 41 years old, which placed him in the younger individual age 18-49 category. (*Id*.) At step five, the ALJ found that a significant number of jobs existed suitable to Plaintiff's limitations. (Tr. 29-30.)

###### E.    Administrative Record

###### 1.    Medical Records

Plaintiff sought treatment for back pain since 2008 (Tr. at 233-77.) In July 2008, the emergency room physician was "not comfortable attributing his symptoms to musculoskeletal back pain" because he was experiencing blood in his urine and he "also had 2+ and equal reflexes and negative straight leg raising in the lower extremities." (Tr. at 233.) Instead, the doctor evaluated possible renal stones. (*Id.*) Plaintiff also had "full lower extremity strength" and could walk on

both his heels and toes." (Tr. at 235.) An MRI of Plaintiff's lumbar spine taken on July 19, 2008, was "slightly degraded by patient motion" but showed "multi-level degenerative changes" with "[l]eft-sided paracentral disc protrusion at the L5-S1 level, resulting in left S1 nerve root compression." (Tr. at 248.)

On March 19, 2009, Plaintiff underwent a "[l]eft L5-S1 microdiskectomy by way of a minimally invasive approach" with Drs. Douglas Geiger and Maureen Sarle. (Tr. at 253.) After surgery, Dr. Gieger noted that Plaintiff should not lift anything greater than 10 pounds, but that he should begin riding a stationary bike and swimming laps in a pool. (Tr. at 267.) Dr. Geiger also noted that he "does have a heavy lifting type job; therefore, he will remain out of work for another six weeks' duration and then return to work with limitations as well." (*Id*.)

An MRI of the lumbar spine taken on March 31, 2011, showed postoperative changes, some scar tissue and "annular disc bulging" "extending to the left of midline and into the left neural foramen causing moderate left neural foraminal stenosis" that "could potentially affect the exiting left L5 nerve root" which "has progressed/worsened when compared to the examination of 2/20/2009." (Tr. at 257, 370.)

Plaintiff was treated with prescription medication and, in 2011, with epidural steroid injections at L5-S1. (Tr. at 280, 284, 286, 338, 359, 361.) Plaintiff also participated in physical therapy in 2011. (Tr. at 340-42.)

On June 1, 2011, Plaintiff was examined by Dr. Marc Strickler, who is associated with Dr. Geiger. (Tr. at 278-79.) Plaintiff showed 5/5 strength in all major muscle groups, his gait was normal, straight leg raising on the right was negative and on the left was "mildly irritable with back pain." (Tr. at 278.) All range of motion was normal and his coordination and sensation were intact.

8

(*Id.*) Dr. Strickler noted that Plaintiff was "wondering if he would be considered disabled" and Dr. Strickler responded, "I do not think he would qualify for that at this time." (Tr. at 279.) The normal findings were consistent with past examinations. (Tr. at 280, 284, 286, 288, 290, 291, 293, 295, 455.) These largely normal findings were repeated on September 6, 2011, March 19, 2012, August 6, 2012, with Dr. Strickler and in October 2012, December 2012, and March 13, 2013 with Dr. Brian Chodoroff. (Tr. at 355, 474, 503-04, 509, 512, 514.) Dr. Chodoroff noted, in September 2012, that Plaintiff "reports only minimal pain with typical pain present prior to procedure. Left extension was associated with minimal back and upper buttock pain. SLR on the left was associated with complaints of mild tightness through his LLE with no clear-cut pain produced. Results promising." (Tr. at 515.)

An MRI of the lumbar spine taken on April 9, 2013, showed, at L5-S1, "no significant change in moderate left foraminal narrowing from a combination of loss of disc height and facet hypertrophy and spurring or mild right foraminal narrowing. Minimal enhancing tissue is surrounding proximal left S1 nerve root is unchanged and likely scar/granulation tissue. Minor disc bulges in remainder of lumbar spine do not cause significant canal stenosis. Lateral spondylotic changes contribute to moderate right greater than left foraminal narrowing at L4-L5 and mild foraminal narrowing at L3-L4." (Tr. at 530.)

On April 19, 2013, Dr. Chodoroff examined Plaintiff and found his strength was normal, but that he had decreased sensation over left lateral leg and thigh, and that he "was barely able to complete three left heel lifts with unilateral stance compared to ten on the right." (Tr. at 532.) On the same date, Dr. Chodoroff completed a lumbar spine residual functional capacity ("RFC") questionnaire wherein he opined that Plaintiff could only sit or stand for 10 minutes at a time, that

Plaintiff needs to walk around every 15 minutes for 5 minutes, that he needs to alternate sitting, standing, and walking, that he could lift up to 20 pounds occasionally, but would be absent from work due to his impairments for more than 4 days per month. (Tr. at 524-25.) Finally, on April 19, 2013, Dr. Chodoroff wrote a letter to Dr. Geiger asking Dr. Geiger to reevaluate Plaintiff "as related to the possibility of pursuing further surgical interventions" based on Plaintiff's "persistent pain" and "abnormal EMG." (Tr. at 534.) The EMG referenced by Dr. Chodoroff was taken on August 23, 2012, and showed "findings consistent with the presence of an active left lumbosacral radiculopathy" "possibly but not absolutely due to the foraminal disk herniation at L5-S1." (Tr. at 516-17.)

### 2.    Administrative Hearing

At the administrative hearing, Plaintiff testified that he works about 10-12 hours per month for a nursing home where his wife works doing things like cleaning out the fish tank or dictating numbers on columns to his wife. (Tr. at 43-44.) Plaintiff lives with his wife and does not have any children or grandchildren. (Tr. at 45.) Plaintiff is able to drive, visit his brother, visit friends, and attend church, and he drove himself to the hearing. (Tr. at 46.) Plaintiff noted that at church, he is the last to get up and the first to sit down, having to steady himself by pulling on the pews. (Tr. at 47.) Plaintiff also has a Facebook page but stated that he "do[es]n't get on it." (Tr. at 48.) Plaintiff and his wife vacationed in Playa Del Carmen, Mexico for a week during the year prior to the hearing. (Tr. at 48-49.) Plaintiff owns a time share and goes there every year, enduring the three-hour flight from Detroit to Cancun. (Tr. at 51.) Plaintiff indicated that he can stand for two hours although he is "in pain from the get go" and that he needs to "sit, stand, move about." (Tr. at 60-61.) Plaintiff also stated that he can lift two to three pounds repetitiously and can lift 20-30

10

pounds once in a while. (Tr. at 61.) Plaintiff is no longer able to mow his own lawn. (Tr. at 62.) Plaintiff also cooks, cleans, and shops on good days and for small amounts at a time. (Tr. at 63-64.) Plaintiff spends most of his day reclining and standing "probably 50/50 about of each, standing and sitting." (Tr. at 64.) Plaintiff used to be an avid hunter and now only goes "[o]nce in a while," which he clarified was "once a week." (Tr. at 67-68.) Plaintiff travels to Michigan's upper peninsula several times a year, but he is only able to ride there by sitting sideways in the backseat of his father's truck. (Tr. at 76.)

The ALJ then asked the vocational expert ("VE") to consider an individual with Plaintiff's background who

> is limited to light work, that is lifting 20 pounds occasionally, ten pounds frequently; this person can stand or walk for six of eight hours; this person can sit for six of eight hours; this person can have frequent but not constant use of foot controls bilaterally; this person can occasionally climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasional balance, stoop, kneel, crouch, and crawl; frequent but not constant use of the hands bilaterally, that's for pushing, pulling in any direction. . . . No overhead work with the right upper extremity; frequent but not constant use of hands for grasping and fingering' no concentrated exposure to vibration, to hazards, that is unprotected heights or moving machinery; and no work on uneven, slippery, shifting or obstructed terrain or surface or floor areas.

(Tr. at 77-78.) The VE testified that such a person could not perform Plaintiff's past relevant work but could perform the 800,000 security guard, 160,000 mail sorter jobs, and 800,000 cashier jobs available in the national economy. (Tr. at 79.)

The ALJ then asked the VE to consider "this same individual needs a sit/stand option . . . .This individual can sit for up to one hour at a time. However, after 30 minutes of sitting this individual needs to be able to walk around for about two minutes. However, they could still stay on some task of that particular job or occupation. This person can stand or walk for up to two hours at a time, for six out of eight hours in a total work day." (Tr. at 79-80.) The VE indicated that

11

the security guard and mail sorter jobs would remain the same but that the cashier position would no longer be available. (Tr. at 80.) However, the VE indicated that industrial processing jobs, for which there are 240,000 jobs in the national economy, would be available to such a person. (*Id.*) If the person could only stand or sit for four of eight hours, with a sit/stand option, the VE indicated that 75 percent of the security jobs would be eliminated but that the industrial processing jobs would not be affected. (Tr. at 81.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work. (Tr. at 26-29.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

### a.    Plaintiff's Argument

If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence could justify the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues that the ALJ improperly evaluated the opinions of Plaintiff's treating physicians, Drs. Chodoroff and Strickler, that the ALJ failed to consider Plaintiff's lumbar radiculopathy to be a severe impairment, that substantial evidence does not support the ALJ's credibility analysis and that the case should be remanded for an award of benefits. (Doc. 12.)

### b.   Medical Source Evidence, Plaintiff's Credibility, and the RFC

### i.   Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B); *accord* 20 C.F.R. § 404.1520(a)(3); *Wyatt*, 974 F.2d at 683. The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). There are important differences between the two types of sources. For example, only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2.

13

Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources, including treating opinions not given controlling weight, 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c). The regulations do not prescribe any similar test for opinions from "other sources." SSR 06-03p, 2006 WL 2329939, at *3. Nonetheless, both the Sixth Circuit and the Commissioner require ALJ's to apply the factors to "other source" opinions. *See Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

14

404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion[,] [including treating sources]," regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's residual functional capacity ("RFC"),[2] and the application of vocational factors. *Id.* § 404.1527(d)(3).

Additionally, a physician's "notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' . . . An ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011) (quoting *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010)) "Otherwise, the hearing would be a useless exercise." *Id.*; *see also Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (noting that there was no medical opinion in "Dr. Kllefer's pain-related statement . . . [because] it merely regurgitates Francis's self-described symptoms."); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to

---

[2] The Commissioner's discretion to determine the claimant's RFC is less capacious than it appears at first. While the ALJ determines the RFC, the ALJ might be required to give controlling weight to treating source opinions on specific limitations. *See* 20 C.F.R. § 404.1513(b)-(c) (describing that medical reports can include a source's "statement about what [the claimant] can still do despite [her] impairments"). These opinions would necessarily affect the RFC. *See Green-Young v. Barnhart*, 335 F.3d 99, 106-07 (2d Cir. 2003) (holding that treating physician's opinion that claimant could not sit or stand for definite periods "should have been accorded controlling weight").

deference because it was based on Poe's subjective complaints, rather than objective medical data.").

When objective evidence does not support the opinion, the regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *4 (1996); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5; *see also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 661 F.3d at 937. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's

16

credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner*, 375 F.3d at 390. However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "'objective evidence of the pain itself'" is not required, *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweicker*, 749 F.2d 1066, 1071 (3d Cir. 1984)), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

17

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3); *see also Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see also Cruse*, 502 F.3d at 542 (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones*, 336 F.3d at 475 ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely on an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless

18

[she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most [she] can still do despite [her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). The Plaintiff bears the burden of proof during the first four stages of analysis, including proving her RFC. *Jones*, 336 F.3d at 474;  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). At step five, the Commissioner does not have to add anything to the RFC, 20 C.F.R. § 404.1560(c), and consequently the burden to prove limitations remains with the Plaintiff at this stage. *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 538 (6th Cir. 2002); *DeVoll v. Comm'r of Soc. Sec.*, 234 F.3d 1267, 2000 WL 1529803, at *3 (6th Cir. 2000) (unpublished table decision); *Her*, 203 F.3d at 391-92. The hypothetical is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Mich. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 2009).

### ii.    Analysis

Plaintiff's arguments lack merit. First, the ALJ gave "significant weight" to the opinion of Dr. Strickler that Plaintiff was not eligible for disability benefits. (Tr. at 29.) As to Dr. Chodoroff's opinion as to the RFC, the ALJ gave his opinion "little weight" because "it was based on an aggravation in symptoms from only 'three weeks ago' and [was] not consistent with the medical evidence as a whole." (*Id.*) I suggest that substantial evidence supports the ALJ's findings. While ALJs and courts should give some deference to medical experts, *see, e.g.*, 20 C.F.R. § 404.1527, at some point they cannot simply write off all questionable medical opinions as the result of inscrutable expertise rather than flawed reasoning. Thus, for example, the ALJ must

measure the consistency of the opinions with other evidence. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c). Dr. Chodoroff's RFC opinion was inconsistent with Dr. Strickler's findings and inconsistent with his own findings when he examined Plaintiff up until the day he filled out the disability evaluation form. Plaintiff consistently exhibited 5/5 strength in all major muscle groups, his gait was normal, straight leg raising on the right was negative and on the left was "mildly irritable with back pain." (Tr. at 278.) All range of motion was normal and his coordination and sensation were intact. (*Id.*) Dr. Strickler noted that Plaintiff was "wondering if he would be considered disabled" and Dr. Strickler responded, "I do not think he would qualify for that at this time." (Tr. at 279.) These largely normal findings were consistent with past and future examinations by Drs. Strickler and Chodoroff. (Tr. at 280, 284, 286, 288, 290, 291, 293, 295, 355, 455, 474, 503-04, 509, 512, 514.) Dr. Chodoroff noted, in September 2012, that Plaintiff "reports only minimal pain . . . complaints of mild tightness through his LLE with no clear-cut pain produced. Results promising." (Tr. at 515.) To the extent that Plaintiff relies on his subjective reports of symptoms that were recorded by his doctors, ALJs are not required to credit the portions of a doctor's notes that merely contain the Plaintiff's subjective complaints. *Masters*, 818 F. Supp. 2d at 1067; *see also Francis*, 414 F. App'x at 804; *Poe*, 342 F. App'x at 156.

The ALJ also properly considered the relevant factors in determining credibility (Tr. at 26-28), and concluded that his medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely credible. (*Id.*) After his microdiskectomy in March 2009, Dr. Geiger restricted Plaintiff from working his heavy lifting job but recommended physical activity and anticipated Plaintiff's return to his job. (Tr. at 267.) Further studies of

Plaintiff's lumbar spine revealed some progression/worsening (Tr. at 257, 370), but an MRI of the lumbar spine taken on April 9, 2013, showed, at L5-S1, "no significant change" and only "Minor disc bulges in remainder of lumbar spine do not cause significant canal stenosis." (Tr. at 530.) This medical evidence coupled with consistent normal findings in strength and coordination as cited above, supports the ALJ's findings that Plaintiff's subjective complaints of disabling symptoms are less than fully credible. Finally, Plaintiff's own testimony that he is able to perform work (albeit for only 10-12 hours per month) doing things like cleaning out the fish tank or dictating numbers on columns to his wife (Tr. at 43-44), is able to drive, visit his brother, visit friends, and attend church, cook, clean, maintain a Facebook page, vacation in Mexico for a week each year, lift 20-30 pounds occasionally, stand for two hours, and hunt once a week, supports the ALJ's credibility findings. (Tr. at 46-68.)

This result is not undermined by Plaintiff's contention that the ALJ failed to consider Plaintiff's lumbar radiculopathy to be a severe impairment. First, the ALJ did consider degenerative disc disease of the lumbar spine a severe impairment and this necessarily includes all that goes with the degenerative disease, including lumbar radiculopathy. To the extent that the ALJ failed to include radiculopathy separately on the list of severe impairments, I suggest that such a failure is of no legal consequence. Once step two is "cleared" by a finding that some severe impairment exists, the ALJ must consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457. "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* Consequently, I suggest that any alleged omission from the list of severe impairments does not undermine the ALJ's decision. As to the RFC analysis, the ALJ expressly

21

stated that he considered all of the claimant's impairments, including impairments that are not severe. (Tr. at 13.) I therefore suggest that the ALJ committed no error. *See Kornecky,* 167 F. App'x at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party").

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

## III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

22

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 30, 2015       S/ Patricia T. Morris
               Patricia T. Morris
               United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 30, 2015       By s/Kristen Krawczyk
             Case Manager to Magistrate Judge Morris